IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Linda Beth Weddle, ) | Civil Action No.: 2:13-2177-RMG-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Charleston County Sheriff's Office, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Linda Beth Weddle ("Plaintiff" or "Weddle") originally filed this action in the Charleston County Court of Common Pleas. (See Dkt. No. 1-1.) On August 12, 2013, Defendant Charleston County Sheriff's Office ("Defendant" or "CCSO") filed a Notice of Removal, stating,

> This action is of a civil nature and involves issues of Federal Question over which the District Court of the United States has original jurisdiction pursuant to 28 U.S.C. § 1441 and 1443. Specifically, removal is based upon Federal Question Jurisdiction and excessive force as alleged in Plaintiff's Complaint . . . .

(Dkt. No. 1 at 1.) This matter is before the Court upon Plaintiff's Motion to Remand, which has been assigned to the undersigned to submit findings and recommendations to the District Court. (Dkt. No. 9.)[1]

## BACKGROUND

The issue before the Court is whether federal question jurisdiction exists. See 28 U.S.C. § 1331. In her Complaint, Plaintiff alleges that the Defendant "is a political subdivision of the State of South Carolina and is subject to suit pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, *et seq*." (Compl. ¶ 2.) Plaintiff alleges that she and a neighbor had a long-running dispute about the Plaintiff's placement of some shrubs in the right-of-way between their properties, and after receiving a nuisance violation

---

[1] At the time Plaintiff filed her Complaint and the Motion to Remand, she was represented by counsel. However, on January 13, 2014, counsel for Plaintiff was relieved, and Plaintiff is now proceeding *pro se*. (See Dkt. No. 22; Dkt. No. 30.)

in February of 2007, "a local judge ordered Plaintiff to keep the shrubs trimmed, to which Plaintiff complied." (Id. ¶¶ 7-8.) According to Plaintiff, she received a notice from the City of North Charleston that the public works department was going to remove the shrubs, but on June 24, 2010, after appearing before the North Charleston City Council, Plaintiff "received assurances from a city official[] that the public works department would not remove the shrubs, but rather, would come out and trim them." (Id. ¶¶ 9-11.) Plaintiff further alleges as follows:

> 12. On . . . July 19, 2010, the Plaintiff and her husband . . . heard pounding on their front door along with repeated doorbell rings.
>
> 13. Plaintiff opened the front door and saw two (2) male City of North Charleston police officers who asked her to come outside. Plaintiff and her husband went outside where they discovered heavy machinery and equipment and a public works crew in their front yard and in the nearby street.
>
> 14. One of the officers told Plaintiff that the public works department had given her since June 18, 2010 to trim or remove the shrubbery she had planted in the right-of-way next to her property and that since she had not done so, the crew was present to remove all of the shrubbery along with a tree that was purportedly infested with termites. The officer then threatened to arrest Plaintiff if she entered the work area set up by the public works department or otherwise interfered with the removal of the shrubs and tree.

(Id. ¶¶ 12-14.)

According to Plaintiff, she "requested that the police officers and work crew refrain from removing the shrubs and trees until she could contact city officials to resolve the matter," but the work proceeded, and the officers left. (Id. ¶ 16.) Plaintiff states that during the removal process, "a public works foreman, Mike Sanders," informed Plaintiff that the work crew was also going to remove a palm tree from the right-of-way near her property." (Id. ¶ 17.) Although Plaintiff "pleaded with Sanders to refrain from removing the tree until she could get it professionally removed and transplanted to another area," Sanders refused; Plaintiff "then called the police and asked them to come out and stop the work crew from

2

removing the tree." (Id.) Plaintiff alleges that as she was speaking to dispatch, the work crew began removing the palm tree, and she hung up the phone and asked the work crew to refrain from removing the tree until the police arrived. (Id. ¶ 18.) Plaintiff further alleges as follows:

> As Plaintiff approached the work crew, Sanders instructed an employee to take a picture of her on his camera phone. Sanders then phoned the police, and subsequently, the same officers who had been present earlier in the day arrived and arrested Plaintiff for disorderly conduct.

(Id. ¶ 19.)

Plaintiff states in her Complaint that she was "handcuffed behind her back" and was "transported to the Sheriff Al Cannon Detention Center, which is operated and controlled by Defendant." (Id. ¶ 20.) Plaintiff alleges as follows:

> 21. While at the Detention Center, Plaintiff, a 54 year-old woman, who had never been in trouble with law enforcement, began to feel nauseous and asked a detention officer for Defendant CCSO for some Alka Seltzer. The officer refused, so Plaintiff then asked for a container to use in the event she had to vomit. The officer again refused.
>
> 22. After the officers' refusal, Plaintiff, who was still handcuffed, laid down on the floor of the jail because she felt ill and was afraid she was going to vomit.
>
> 23. Suddenly, and without warning, a CCSO detention officer jerked Plaintiff off the floor, threw her against a concrete wall, and called her an alcoholic and a drug addict.
>
> 24. As a result of this excessive use of force, the Plaintiff suffered significant physical injuries and damages, including but not limited to, numerous contusions to her arms; severe whiplash; two torn muscles in her shoulders; swelling; tremendous pain; mental anguish; emotional distress; and humiliation.
>
> 25. Plaintiff subsequently asked the CCSO detention officer to be allowed to see the nurse for her injuries, to which the officer refused and instead taunted her and then threatened to place Plaintiff in a padded cell if she did not keep her mouth shut.

(Id. ¶¶ 21-25.)

Plaintiff lists two causes of action against Defendant in her Complaint: (a) gross negligence and (b) negligent training and supervision. (See generally Compl.) Within her gross negligence claim, Plaintiff alleges that Defendant was "grossly negligent in its care, custody, and control of the Plaintiff" by, *inter alia*, "improperly restraining the Plaintiff"; using "excessive and unnecessary force"; and "failing to use reasonable means to restrain the Plaintiff." (See Compl. ¶ 27.) As to her negligent training and supervision claim, Plaintiff alleges that the detention center officers "were acting in the scope of their employment with Defendant CCSO in their use of excessive force against the Plaintiff." (Id. ¶ 31.) Plaintiff further asserts that the "described acts and/or omissions resulted from the failure of Defendant CCSO" and its agents "to exercise reasonable care in training and supervising its law enforcement officers in the proper methods of restraint, supervision, protection, control, confinement, and custody of its prisoners." (Id. ¶ 32.)

Defendant removed the action on August 12, 2013; Plaintiff filed the instant Motion to Remand on September 3, 2013. (See Dkt. No. 1; Dkt. No. 9.)

## DISCUSSION

In her Motion to Remand, Plaintiff contends that her Complaint contains "no allegations . . . of a violation of civil rights pursuant to 42 U.S.C. § 1983, or violation of any other federal statute." (Dkt. No. 9-1 at 1.) Plaintiff asserts that her claims "do not include federal questions." (Id. at 2.)

"The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir. 1994) (citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)). On a motion to remand, courts are obligated to "construe removal jurisdiction strictly because of the 'significant federalism concerns' implicated." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (quoting Mulcahey, 29 F.3d at 151). "If federal jurisdiction is doubtful, a remand is

necessary." Mulcahey, 29 F.3d at 151 (citing In re Business Men's Assur. Co. of America, 992 F.2d 181, 183 (8th Cir. 1993); Cheshire v. Coca-Cola Bottling Affiliated, Inc., 758 F. Supp. 1098, 1102 (D.S.C. 1990)).

The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441, which states, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As there is no allegation of diversity between the parties, the propriety of removal depends upon whether this case falls within the "federal question" jurisdiction as set forth in 28 U.S.C. § 1331. See Mulcahey, 29 F.3d at 151. That section states, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

If Plaintiff's claims do not "aris[e] under the Constitution, laws, or treaties of the United States," remand is proper. Dixon, 369 F.3d at 816 (quoting 28 U.S.C. § 1331). "The vast majority of lawsuits 'arise under the law that creates the cause of action.'" Id. (quoting Am. Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916)). In the instant case, it is clear that South Carolina law creates the at-issue causes of action, as the claims are brought pursuant to the South Carolina Tort Claims Act (the "SCTCA"). (See generally Compl.)

When the causes of action are created by state law, the "inquiry does not end there." Dixon, 369 F.3d at 816. Instead, the court must determine "whether [the] case is within the 'small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to

5

arise under federal law within the meaning of 28 U.S.C. § 1331." Id. (quoting Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 806 (4th Cir. 1996)). As stated in Dixon,

> [A] case may arise under federal law where the vindication of a right under state law necessarily turn[s] on some construction of federal law, but only [if] ... the plaintiff's right to relief *necessarily depends* on a *substantial* question of federal law. Thus, in the absence of another jurisdictional ground, a defendant seeking to remove a case in which state law creates the plaintiff's cause of action must establish two things: (1) that the plaintiff's right to relief necessarily depends on a question of federal law, and (2) that the question of federal law is substantial. If either of these two elements is lacking, removal is improper and the case should be remanded to state court.

Dixon, 369 F.3d at 816 (internal quotation marks and citations omitted).

A plaintiff's right to relief necessarily depends on a question of federal law when "it appears that some . . . disputed question of federal law is a necessary element of one of the well-pleaded state claims." Franchise Tax Bd. of Cal. v. Constr. Laborer's Vacation Trust, 463 U.S. 1, 13 (1983). "If a plaintiff can establish, without the resolution of an issue of federal law, all of the essential elements of his state law claim, then the claim does not necessarily depend on a question of federal law." Pinney v. Nokia, Inc., 402 F.3d 430, 442 (4th Cir. 2005) (citing Franchise Tax Bd, 463 U.S. at 13-14; Dixon, 369 F.3d at 817). As noted in Pinney,

> This principle is illustrated in Franchise Tax Board. There, the Supreme Court found no substantial federal question when a California tax agency attempted to enforce a levy on funds held in trust for several taxpayers under an ERISA-covered benefit plan. 463 U.S. at 13–14, 103 S.Ct. 2841. The claim did not necessarily depend on a resolution of federal law because "California law establishe[d] a set of conditions, without reference to federal law, under which a tax levy may be enforced; federal law bec[ame] relevant only by way of a defense to an obligation created entirely by state law, and then only if [the state agency] ha[d] made out a valid claim for relief under state law." Id. at 13, 103 S.Ct. 2841. "[I]t has been well-settled law," the Court noted, "that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Id. at 14, 103 S.Ct. 2841.

6

Pinney, 402 F.3d at 442-43.

In the instant case, Plaintiff brings two causes of action: one for gross negligence, and one for negligent training and supervision. The question for this Court is whether "a disputed issue of federal law is an essential element of at least one of [the plaintiff's] state law claims." Pinney, 402 F.3d at 448-49. In order to prevail on her negligence claim, Plaintiff must prove the following elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." Carolina Chloride, Inc. v. Richland Cnty., 394 S.C. 154, 163, 714 S.E.2d 869, 873 (2011) (quoting Tanner v. Florence Cnty. Treasurer, 336 S.C. 552, 561, 521 S.E.2d 153, 158 (1999)).[2] Plaintiff's negligent training and supervision claim is a direct negligence claim:

> In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public.

James v. Kelly Trucking Co., 377 S.C. 628, 631, 661 S.E.2d 329, 330 (2008). Neither of those claims necessarily depend on a question of federal law, as no "disputed question of federal law is a necessary element" of either claim. Franchise Tax Bd., 463 U.S. at 13.

The Supreme Court has been quite clear that for removal to be proper under the substantial federal question doctrine, a plaintiff's ability to establish the necessary elements of his state law claims must rise or fall on the resolution of a question of federal law. See Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 813 (1986) ("[T]he mere

---

[2]Gross negligence "is the failure to exercise slight care. [It] has also been defined as a relative term, and means the absence of care that is necessary under the circumstances." Etheredge v. Richland Sch. Dist. One, 341 S.C. 307, 310, 534 S.E.2d 275, 277 (2000) (citations omitted).

7

presence of a federal issue in a state cause of action does not confer federal-question jurisdiction."). In the instant case, Plaintiff's claims do not necessarily depend on a question of federal law. In addition to asserting negligence claims on the basis of alleged excessive force, Plaintiff also bases her negligence claims on, *inter alia*, improper restraint. (See generally Compl.) Thus, it cannot be said that Plaintiff's right to relief "necessarily depends on a question of federal law." Dixon, 369 F.3d at 816; see also Green v. S.C. Dep't of Corrs., Civ. A. No. 9:11-3407-DCN-BM, 2012 WL 360144, at *1 (D.S.C. Jan. 13, 2012), adopted at 2012 WL 360105 (Feb. 2, 2012) ("[A]lthough it can be reasonably inferred from the face of the Complaint that Plaintiff believes the actions alleged violated his constitutional rights, it is also clearly evident from a plain reading of the Complaint that Plaintiff is only asserting state tort claims in this case. Further, in the motion to remand, Plaintiff affirmatively states and confirms that he is only pursuing state law claims in this lawsuit."); Gregg v. County of Darlington, Civ. A. No. 4:07-cv-60-RBH, 2004 WL 5310270, at *1-2 (D.S.C. May 14, 2004) (remanding case "aris[ing] from the alleged mishandling of an attempt to apprehend an alleged murder suspect").[3] The undersigned therefore recommends remanding this case.

---

[3] Indeed, in Defendant's Response in Opposition to Plaintiff's motion, Defendant states,
If Plaintiff confirms by way of a supplemental pleading that there is no civil rights claim being raised as a result of this alleged altercation on June 18, 2010, the Defendant would agree that it must concede this issue and believes the case would be proper for Remand to State Court.
(Dkt. No. 10 at 2 of 3.)

## **CONCLUSION**

It is therefore RECOMMENDED, for the foregoing reasons, that Plaintiff's Motion to Remand (Dkt. No. 9) be GRANTED and that this action be REMANDED to the Court of Common Pleas for Charleston County, South Carolina.

IT IS SO RECOMMENDED.

                                          s/Bruce Howe Hendricks
                                          United States Magistrate Judge

May 2, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).